UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| ALEC ROBERT COLWELL,<br><br>Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | 4:17-CV-04142-KES<br><br><br>MEMORANDUM OPINION AND ORDER AFFIRMING THE DECISION OF THE COMMISSIONER |

Plaintiff, Alec Robert Colwell, seeks review of the decision of the Commissioner of the Social Security Administration denying his claim for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1382. Docket 12. The Commissioner opposes the motion and urges the court to affirm the denial of benefits. Docket 13. For the following reasons, the court affirms the decision of the Commissioner.

## PROCEDURAL HISTORY

Colwell filed an application for supplemental security income on July 31, 2013, alleging disability since June 13, 2013. AR 181. The Commissioner denied his claim initially on November 13, 2013, and upon reconsideration on February 6, 2014. AR 72, 82. Colwell then appeared with counsel before Administrative Law Judge (ALJ) Guy Koster at an administrative hearing on June 22, 2016. *See* AR 37 (transcript of hearing). The ALJ issued an opinion affirming the denial of benefits on August 11, 2016. AR 16. The Appeals

Council denied Colwell's request for review on August 24, 2017. AR 1-3. Thus, Colwell's appeal of the Commissioner's final decision is properly before the court under 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

Plaintiff, Alec Robert Colwell, was born on October 6, 1992. AR 40. He was 20 years old at the alleged disability onset date and 23 years old at the time of the administrative hearing. *Id.* Colwell is not married and lives with his mother, Pam Colwell. AR 40. Colwell and his mother moved from Florida to South Dakota around November 30, 2016, due to his mother's employment. AR 9. Colwell graduated from high school and attended college as a full-time student at Daytona State College starting January of 2015. AR 40, 265.

Colwell stated he has not had steady employment. AR 41. He alleged that he has not been able to work since June 13, 2013, but has "done a couple of odd jobs for a short period of time . . . ." AR 40. One of these jobs involved Colwell moving furniture at a furniture liquidation store in Florida sometime in 2014. AR 41, 62-63. He worked at the furniture store for approximately a month. AR 41. Additionally, Colwell worked and lived with his grandparents from May 17, 2014, to July 13, 2014. AR 267.

On February 2, 2009, Colwell was assessed by Licensed Psychologist, Denise Marandola, Ph.D. AR 281-83. Her assessment of Colwell supported a diagnosis of attention deficit hyperactivity disorder (ADHD) and medication was recommended. *Id.* Following Dr. Marandola's recommendation, Dr. Michael

Hattan diagnosed Colwell with attention deficit disorder (ADD) on February 20, 2009. AR 359-60. Dr. Hattan prescribed Adderall to Colwell. AR 360.

On May 29, 2013, Colwell was admitted to Mercy Medical Center's emergency room. AR 295. Colwell was brought in from the jail. AR 295-96. Dr. Thomas Benzoni, the emergency room physician, assessed Colwell as having "emotional problems" and released him because no further workup was necessary. AR 296.

On June 13, 2013, the county sheriff deputies brought Colwell to Mercy Medical Center to be admitted to the Psychiatric Inpatient Unit under court committal petitioned by Colwell's family. AR 381, 658. Colwell tested positive for cannabinoid at his admitting. AR 306, 309. Dr. Kunal Patra acted as Colwell's physician during Colwell's stay in the Psychiatric Unit with Dr. Rodney Dean as the attending physician. AR 307. On July 3, 2013, Colwell was discharged from Mercy Medical Center with the plan to have him enter chemical dependency treatment at Synergy. AR 303. At his discharge, Colwell's GAF score was 55. *Id.* In Dr. Dean's Mental Health Summary document, Dr. Dean diagnosed Colwell with schizophrenia, paranoid type, chronic with acute exacerbation; polysubstance dependence; and nicotine dependence. *Id.*

On July 3, 2013, Mercy Medical Center transferred Colwell to Synergy, a residential, chemical dependency treatment program. AR 304. Nicole Keegan, an intake clinician at Synergy, initially diagnosed Colwell with "cannabis, other substance, sedative, hypnotic, or anxiolytic, and nicotine dependence." AR 493. On July 10, 2013, Colwell had a meeting with Collette McCullough, a nurse

practitioner, for a psychiatric progress interview and medication review. AR 494. McCullough scored Colwell's GAF at 48 and diagnosed him with "Cannabis Dependence, Cough Syrup Dependence, K2 Abuse, Adderall Abuse, Psychotic Disorder, NOS; Probable Substance Induced; Rule out Bipolar Mood Disorder Type 1." *Id.* On July 12, 2013, Colwell refused to take his medications. AR 492. This behavior continued until July 15, when Colwell walked off the unit and refused to return. *Id.*

After leaving Synergy, Colwell was arrested and placed in jail for ten days. AR 658. After his release from jail, Colwell was readmitted to Mercy Medical Psychiatric Unit on July 25, 2013. AR 658. The day after Colwell was admitted, Dr. Patra noted that the major issues for Colwell, in addition to his recreational drug problems, were his psychosis and mood. AR 505. In Dr. Patra's Mental Health Summary, Colwell's discharge diagnoses included "schizoaffective disorder, bipolar type, most recently depressed; polysubstance dependence; rule out schizophrenia paranoid type, chronic with acute exacerbation." AR 500. Colwell's GAF score was at 55. *Id.* Dr. Patra stated, "The patient actually improved significantly with his mood. He still had residual psychosis but was handling those much better." AR 500-01.

Following his stabilization, Mercy Medical Center discharged Colwell to the Pride Group in Le Mars, Iowa, on August 13, 2015. AR 500, 658, 791. Colwell's admitting diagnosis included schizoaffective disorder, bipolar type and polysubstance abuse/dependence. AR 791. While at the Pride Group, Colwell received structure, assistance, and supervision over his medication and

daily activities. *See* AR 665-730, 801-47. Physician Assistant Albert Okine conducted all of Colwell's psychiatric evaluations at the Pride Group. *See* AR 654, 656, 658, 788. Colwell remained a resident of the Pride Group for nine months. AR 264.

During his residency at the Pride Group, Colwell also attended mental health sessions at Plains Area Mental Health Center. AR 603. On August 21, 2013, during a mental status exam, Jan Smith, MS, observed, "Client states that he used to hear voices and that now he is taking his meds and is no longer hearing them." AR 615. Additionally, Colwell received substance abuse treatment from Jackson Recovery Centers. AR 650.

Following Colwell's inpatient treatments, Dr. Adly Thebaud became his primary physician. AR 46. Colwell continued on his current medication regimen as "he has done well on his present combination of psychotropic." AR 861-62. At his August 11, 2014 appointment at Dr. Thebaud's office, Colwell did not have auditory or visual hallucinations, paranoid ideations, mood swings or racing thoughts. AR 861. He mentioned problems with focusing. *Id.* His GAF score was 50.862. *Id.* Colwell's most recent visit on the record with Dr. Thebaud's office occurred on April 7, 2016. *Id.* At that time, his GAF score was 60. *Id.* Again, Colwell's medication regimen went unchanged. AR 860. Notes from other appointments at the office, dated from November 23, 2015, to March 8, 2016, show that Colwell was stable and felt "good." AR 860.

On March 25, 2015, Dr. Thebaud drafted a letter pertaining to Colwell's mental health status. AR 266. The letter stated that Dr. Thebaud diagnosed

Colwell with schizoaffective disorder and that he will need long-term maintenance on psychotropic medications. *Id.* He listed his symptoms and opinioned that his life will include marked restrictions on daily living activities, marked difficulty in maintaining social functions and lack of concentration, and a risk of many episodes of decompensation. *Id.* His letter ends with his conclusion that due to his condition, it is likely that Colwell will miss more than two days of work per month and require two or more unscheduled breaks in addition to the standard three breaks per day. *Id.*

## ADMINISTRATIVE HEARING

During the administrative hearing, the ALJ heard testimony from Colwell, Ms. Colwell, and Mark Capps, a vocational expert. Colwell, represented by counsel at the hearing, testified about his education. AR 51. He testified that he is in his second year of college. *Id.* As a full-time student, he takes four classes per semester. *Id.* He stated that he tries to take as many online classes as possible, but also takes classes in-person. AR 52. Colwell testified his mother and a tutor often assist him with his schoolwork. AR 55. Russell, Colwell's tutor, only assists Colwell with his in-person classes. *Id.* Colwell stated he could not get his coursework done without the assistance of his mother or tutor. *Id.* His grades range from A's to failing. AR 56.

Colwell also testified about the other activities in which he is involved. He testified that he spends time watching TV, making food, going to the beach with his little brother, and grocery shopping with his mother. AR 52, 53, 56. He testified that he helps around the house with chores. AR 54. He also testified

6

that he plays recreational indoor hockey every Monday night. AR 53-54. Colwell told the ALJ about volunteering at an animal shelter at the end of 2014. AR 53. After a month, the shelter supervisor asked Colwell to not return because he could not stay on task. AR 53, 59. In addition, Colwell testified about his experiences at work. He provided testimony about why he was fired at the furniture store. AR 42. He explained that he had a difficult time completing the tasks that were asked of him. *Id.* His employer would ask him to do three or four things and he would only remember the first thing told to him. *Id.*

During the hearing, Colwell discussed his current and past mental health status and issues. At the time of the hearing, Colwell testified that he saw a counselor, Bryce Laraway, every two weeks for one-hour appointments. AR 46, 57. Additionally, he saw Dr. Thebaud at Family Psychiatrics Services for the last two years, and Dr. Thebaud prescribed medication to him. AR 46, 48. His medication included Depakote (1 pill every night) and Clozapine (1.5 pill every day). AR 47-48. Colwell went to Dr. Thebaud's office once a month and primarily saw Jessica Shutt, an ARNP. AR 47. Colwell testified that he only met with Dr. Thebaud once back in March 2015 for an evaluation. *Id.*

Colwell's testimony also contained details about his concentration. He testified that though he has been on medication and received counseling, he still struggled with his concentration. AR 50. He stated, "Focus, and concentration, and completing tasks are my biggest flaws right now." *Id.* The ALJ asked Colwell about his concentration and possible memory issues. AR 57. Colwell replied, "I don't think it's memory loss; it's just . . . a lack of focus." *Id.*

Colwell testified that he can stay on task for an hour, but after that hour he needs a break. *Id.* He said two days out of the week, he is "completely a vegetable," becomes "spacey," and cannot get any task completed. AR 55. He explained that this occurs in the middle of the week – every week – because he starts to get "worn out." *Id.*

Colwell testified about his history of drug abuse. AR 42. Colwell admitted he began abusing drugs in 2009. AR 46. The drugs he abused were Coricidin (cough medicine), which he used three days a week, and marijuana, which he used a gram a day. AR 42. Colwell's testimony related his drug use to self-medicating; he would take Coricidin "to enhance [his] brain activity if . . . [his] brain was going slow, and [he would] use marijuana to calm it back down . . . ." AR 43. During the hearing, he explained the side-effects of his drug use included hallucinations, delusions, and voices in his head. AR 50. Because Colwell had been sober for the last two years, he no longer experienced those side effects. AR 43, 50. Colwell testified about his times in drug rehabilitation. AR 43. He testified that his most recent stay was at Keystone in October of 2013. AR 45. He previously received treatment at Jackson Recovery Centers and Plains Area Mental Health Center sometime in 2013. AR 43-44.

Colwell's mother, Pam Colwell, also testified during the administrative hearing. AR 59. Ms. Colwell's testimony mainly pertained to her assistance in Colwell's life. She testified that she takes Colwell to 80% of his appointments, though when she is traveling, Colwell went to his appointments on his own. AR 60. Additionally, Ms. Colwell's biggest role is managing Colwell's schedule. AR

61. Ms. Colwell's testimony also contained information about Colwell's moods. She testified that on good days, she and Colwell can talk about homework and he is focused and engaged. AR 61. But on bad days, which happen every two weeks and last two to three days, "it's not soaking in and [Colwell] really isn't responding." AR 61-62.

Ms. Colwell also testified about Colwell's mental health. She said that Colwell was diagnosed with ADD in 2009 and bipolar in June of 2013. AR 63. Between 2014 and 2015, Colwell saw Dr. Josette Romain, a doctor at Dr. Thebaud's office. AR 60. She testified that Colwell's prescriptions require a brief monthly doctor visit. AR 61. She stated that as long as the medications are working and there are no hospitalizations, these visits are routine. *Id.* The last topic Ms. Colwell testified about was Colwell's employment. She discussed Colwell's most recent employment at Cardinal Farms, which is owned by Colwell's maternal grandparents, in early 2013. AR 62. Additionally, she testified about Colwell's time working at the furniture store in Florida before his bipolar diagnosis. AR 62-63.

Mark Capps testified as the vocational expert during the administrative hearing. AR 65. The ALJ posed a hypothetical to Capps about a person the same age, education, and lack of exertional limitations as Colwell but who was limited to performing work that required only a simple routine, repetitive tasks, a low stress stable environment involving few changes in the routine work setting, simple work-related decisions, and only occasional contact with the general public. AR 65. In response, Capps testified that such a person could

perform unskilled work like a hand packager, floor cleaner, or warehouse worker. AR 65-66. Capps testified that the same person from hypothetical one who could only maintain concentration, persistence, and pace for up to two-hour segments could still work as a hand packager, floor cleaner, or warehouse worker. AR 66. In response to a third hypothetical question posed by the ALJ, Capps testified that a person who was unable to maintain concentration, persistence, and pace, required two or more unscheduled breaks during the work day, and would be absent two or more day a month would not be able to perform work on a full-time competitive basis. *Id.* Colwell's attorney asked Capps whether each alleged symptom from Colwell's impairments, individually – that is, (1) unable to maintain concentration, persistence, and pace at work; (2) requiring two or more unscheduled breaks during a regular work day; (3) missing two or more days of work in a month – would be cause for termination. AR 69. Capps answered that each alleged symptom alone would be cause for termination. *Id.*

## ALJ DECISION

Employing the five-step analysis associated with an application for social security benefits, the ALJ denied Colwell's claim on August 11, 2016. AR 30. At step one, the ALJ found that Colwell had not engaged in substantial gainful activity since July 31, 2013, the application date. AR 18. At step two, the ALJ determined Colwell had the following severe impairments: schizoaffective disorder, bipolar type and polysubstance abuse/dependence in sustained remission. *Id.*

At step three, the ALJ concluded Colwell does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* At step four, the ALJ found that Colwell has the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with some non-exertional limitations.[1] AR 20. At step five, the ALJ held that the transferability of job skills was not an issue because Colwell did not have past relevant work. AR 29. The ALJ found that there are jobs that exist in significant numbers in the national economy that Colwell can perform considering his age, education, work experience, and RFC. *Id.* Thus, the ALJ concluded that Colwell is not disabled under the Social Security Act. AR 30.

## STANDARD OF REVIEW

The court must uphold the ALJ's decision if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). " 'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the conclusion.' " *Teague*, 638 F.3d at 614 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). When reviewing the record, "the court 'must consider both

---

[1] The ALJ found Colwell can perform simple routine and repetitive tasks in a low stress, stable environment involving few changes in the routine work setting. He can make simple work-related decisions and can have occasional contact with the public and supervisors. Also, Colwell can maintain concentration, persistence, and pace in two-hour segments. AR 20.

evidence that supports and evidence that detracts from the Commissioner's decision.' " *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007)). If the Commissioner's decision is supported by substantial evidence in the record as a whole, the court may not reverse it merely because substantial evidence also exists in the record that would support a contrary position or because the court would have determined the case differently. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)).

The court also reviews the Commissioner's decision to determine if an error of law has been committed, which may be a procedural error, the use of an erroneous legal standard, or an incorrect application of the law. *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (citations omitted). Issues of law are reviewed de novo with deference accorded to the Commissioner's construction of the Social Security Act. *Id.* (citing *Juszczyk v. Astrue*, 542 F.3d 626, 633 (8th Cir. 2008)).

## THE FIVE STEP PROCEDURE FOR DISABILITY DETERMINATIONS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(3)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). An ALJ must apply a five-step procedure when determining if an applicant is disabled. *Smith v. Shalala*, 987 F.2d 1371, 1373 (8th Cir. 1993). The steps are as follows:

**Step One**: Determine whether the applicant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b).

**Step Two**: Determine whether the applicant has an impairment or a combination of impairments that are severe. 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c).

**Step Three**: Determine whether any of the severe impairments identified in Step Two match the listing in Appendix 1. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 416.920(d).

**Step Four**: Considering the applicant's RFC, determine whether the applicant can perform any past relevant work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 416.920(g).

**Step Five**: Determine whether any substantial gainful activity exists in the national economy that the applicant can perform. 20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.920(f).

## DISCUSSION

Colwell urges the court to review the ALJ's decision for the following reasons: (1) the ALJ failed to identify all of Colwell's severe impairments; (2) the ALJ erred in evaluating whether Colwell met listing 12.04 for bipolar disorder;

(3) the ALJ's RFC finding is not supported by substantial evidence; (4) the record as a whole does not support the ALJ's finding that Colwell was not disabled; and (5) the Appeals Council failed to properly consider the evidence from Bryce Laraway. Docket 12-1. The court will address these arguments in the order of the five-step procedure outlined above. Colwell also requests the court to remand the case with instructions for the Commissioner to award benefits or for further proceedings. *Id.* at 2.

## I.    Step Two

The ALJ found that Colwell had the severe impairments of schizoaffective disorder, bipolar type and polysubstance abuse/dependence. AR 18. Colwell argues that the ALJ should have found Colwell's ADHD to be a severe impairment because there is medical evidence in the record. Docket 12-1 at 17. The ALJ did not include ADHD in listing Colwell's severe impairments.

There are inconsistencies in the psychological records about whether Colwell has ADHD. In February of 2009, Denise Marandola, Ph.D., a licensed psychologist, drafted a letter to Dr. Michael Hattan, stating Colwell's assessment supported a diagnosis of ADHD and recommended medication treatment. AR 281-83. Dr. Hattan prescribed Colwell Adderall to treat Colwell's ADD. AR 360.

Though Colwell was diagnosed with ADHD in 2009 and prescribed Adderall, the record does not contain any other medical evidence that Colwell was prescribed and/or took medication for ADHD at the time he filed for disability. At the administrative hearing, Colwell testified that he only took

14

Depakote and Clozapine. AR 47-48. On August 11, 2014, Dr. Romain noted Colwell "was on Adderall in the past." AR 862. There is evidence that at some point Colwell admitted to abusing Adderall, though there is no information whether the drug was prescribed at that time. AR 494. Besides these notes, there is no additional medical evidence that relates to Colwell's previous 2009 diagnosis. Other medical providers listed psychological or psychiatric issues without mentioning ADD or ADHD. AR 303, 500, 633-34, 663, 860, 862. But there are medical notes that his attention and concentration were "impaired." AR 266, 543, 861, 862. Also, Colwell has made statements that he has issues with focus and concentration. AR 41-42, 50, 57.

The ALJ, despite not finding ADD or ADHD among Colwell's severe impairments, discussed and considered Colwell's concentration and focus issues in assessing his RFC. AR 20, 21, 24, 26, 27. Thus, the failure to identify Colwell's possible ADHD in step two, if error at all, was harmless, because the ALJ continued to consider ADHD in the context of the RFC. *See Reinhardt v. Berryhill*, No. 4:16-CV-04009-RAL, 2017 WL 819479, at *13 (D.S.D. Mar. 1, 2017).

## II.    **Step Three**

In step three, the ALJ must determine whether the claimant's severe impairment or impairments are such that a finding of disability is appropriate. *See* 20 C.F.R. § 416.920(a)(4)(iii). If the claimant's severe impairments, individually or in combination, satisfy the requirements of a listing in Appendix 1 of Subpart P in 20 C.F.R. Part 404 (Appendix 1), then "the claimant is

conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). The determination is solely a medical determination, and the claimant bears the burden of showing that his impairment meets or equals a listed impairment. *Pyland v. Apfel*, 149 F.3d 873, 877 (8th Cir. 1998); *Cockerham v. Sullivan*, 895 F.2d 492, 496 (8th Cir. 1990).

The ALJ found that Colwell does not suffer from an impairment or combination of impairments that meet or equal the severity of one of the listed impairments in Appendix 1. AR 18. Specifically, the ALJ concluded that Colwell's schizoaffective disorder and bipolar disorder did not meet paragraph B or C of listings 12.03 and 12.04. AR 19. In regards to not satisfying paragraph B, the ALJ provided specific evidence from the record to demonstrate that Colwell's mental impairments did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration. *Id.*

Colwell argues the ALJ erred when he did not find that Colwell met the listing 12.04 for bipolar disorder. Docket 12-1 at 17. The sole issue here is paragraph B's criteria because Colwell's argument only mentions the subsections of paragraph B. Paragraph B requires a finding of affective disorder if at least two of the following are found: (1) marked restriction of daily living activities; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.04B (2016).

16

The ALJ found Colwell had mild restrictions in his daily living activities. AR 19. The ALJ noted that Colwell was able to feed, bathe, and clothe himself without prompting, supervision or assistance; Colwell was able to dress appropriately and was groomed at most of his medical appointments. *Id.* The ALJ found Colwell had moderate difficulties in his social functioning. *Id.* The ALJ noted Colwell was a full-time college student. *Id.* Additionally, the ALJ stated Colwell interacted effectively and appropriately with medical personnel, played hockey, went to the beach with his brother, and shopped for groceries with his mother. *Id.* Next, the ALJ found Colwell had moderate difficulties in his concentration, persistence, or pace. *Id.* The ALJ based his decision on Colwell's ability to drive himself to his appointments, his full-time enrollment in college courses, and his ability to discuss his symptoms and limitations in a coherent manner. *Id.* Lastly, the ALJ found that Colwell had experienced two episodes of decompensation that have been for extended duration, but the ALJ noted that there was no evidence of decompensation once Colwell stopped abusing drugs. *Id.* The record supports the ALJ's findings. Because Colwell did not meet two of the paragraph B criteria, the ALJ did not err.

Colwell contends the ALJ "improperly discounted" Dr. Thebaud's opinion. Docket 12-1 at 17. Colwell contends Dr. Thebaud's opinion proves Colwell meets the 12.04 listing. *Id.* (citing AR 266). On March 26, 2015, Dr. Thebaud drafted a letter containing his opinions on Colwell's mental health. AR 266. In this letter, Dr. Thebaud opinioned Colwell "often presents with marked

restriction of daily living activities, marked difficulty in maintaining social functions, and lack of concentration" and has a risk of decompensation. *Id.*

"A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight." *Cunningham v. Apfel*, 222 F.3d 496, 502 (8th Cir. 2000). A treating physician's opinion does not deserve greater weight than other physicians' opinions when the treating physician's opinion contains "nothing more than vague, conclusory statements." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (quoting *Piepgras v. Chater,* 76 F.3d 233, 236 (8th Cir. 1996)); *see also Fentress v. Berryhill*, 854 F.3d 1016, 1020-21 (8th Cir. 2017), as corrected (Apr. 25, 2017) (upholding the Commissioner's decision to give little weight to treating physician because there was substantial evidence in the record that was inconsistent with the physician's evaluation including other medical evidence, the claimant's own statements, and the claimant's daily activities).

Here, the ALJ properly discounted Dr. Thebaud's letter. Dr. Thebaud's letter was conclusory as he cited no medical evidence to back up his statements and provided no elaboration. *See Wildman*, 596 F.3d at 964 (upholding the ALJ's decision to discount a treating physician's opinion because it was conclusory, consisted of three checklist forms, cited no medical evidence, and provided no elaboration). It should be noted that the ALJ did not disregard Dr. Thebaud's letter in its entirety, he gave it "less than controlling" weight. AR 26. Because the ALJ discounted Dr. Thebaud's letter, the court

finds there is substantial evidence in the record that supports the ALJ's finding

that Colwell does not meet paragraph B's criteria under listing 12.04.

### III.    RFC Determination

At step four, the Commissioner must determine the claimant's RFC,

which is the most the claimant can do despite the claimant's mental and

physical limitations. *Brown v. Barnhart*, 390 F.3d 535, 538-39 (8th Cir. 2004)

(citing 20 C.F.R. § 404.1545(a)(1)). The claimant's RFC is determined based on

all relevant evidence in the record, including medical records, observations of

treating physicians, and the individual's own description of his limitations.

*Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006). But the ALJ's finding

"must be supported by medical evidence that addresses the claimant's ability

to function in the workplace." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir.

2003). The ALJ's RFC evaluation must include a "narrative discussion" that

cites specific medical and non-medical evidence and explains how the evidence

supports his conclusions. SSR 96–8p, 1996 WL 374184 (July 2, 1996). Also,

the ALJ must explain how any material inconsistencies or ambiguities in the

record were considered and resolved. *Id.*

In determining Colwell's RFC, the ALJ considered Colwell's symptoms

and whether they were consistent with the objective medical evidence, as well

as the opinion evidence of several treating physicians. AR 20-29. Colwell

argues that the ALJ's RFC determination was not supported by evidence in the

record as a whole. Docket 12-1 at 17. Colwell alleges four additional errors on

the part of the ALJ: (1) the ALJ's findings of facts are not supported by

substantial evidence (*id.* at 18); (2) the ALJ erred in evaluating evidence from Colwell's treating providers (*id.* at 20); (3) the ALJ failed to give appropriate weight to evidence from lay witnesses (*id.* at 24); and (4) the ALJ should have issued a more restricted RFC (*id.* at 17).

The ALJ determined Colwell had the residual functional capacity to perform a full range of work at all exertional levels but with some non-exertional limitations. AR 20. The non-exertional limitations restricted Colwell to performing simple, routine, and repetitive tasks in a low stress, stable environment involving few changes in the routine work setting; making simple work-related decisions; having occasional contact with the public and supervisors; and maintaining concentration, persistence, and pace in two-hour segments. *Id.*

## A. Findings of Facts

In determining whether to fully credit a claimant's subjective complaints, the ALJ engages in a two–step process: (1) is there an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms; and (2) if so, the ALJ evaluates the claimant's description of the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to work. *See* SSR 16-3p, 2016 WL 1020935 (Mar. 16, 2016); 20 C.F.R. § 404.1529. Here, the ALJ found Colwell had medically determinable mental impairments that could reasonably be expected to produce his symptoms in

accordance with the first step above (AR 22); so, the credibility determination rested on the second step.

In evaluating the second step of the analysis, an ALJ must consider several factors: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the condition; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; (5) functional restrictions; (6) relevant work history; and (7) the lack of objective medical evidence to support the complaints. *Wildman*, 596 F.3d at 968 (citations omitted). A claimant's subjective complaints may be discredited only if they are inconsistent with the evidence as a whole. *Id.* The court will "defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so," *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (internal quotation omitted), though the ALJ does not need to explicitly discuss each of the factors above. *Wildman*, 596 F.3d at 968 (citing *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005)).

Colwell argues the ALJ made erroneous factual findings and then used those findings to discount the opinions from several medical and lay witnesses. Docket 12-1 at 18. First, Colwell argues the ALJ's finding that Colwell does not have a memory problem is not supported by substantial evidence. *Id.* Second, Colwell argues the ALJ made several erroneous factual findings as to Colwell's daily activities. *Id.* at 19.

### 1. Colwell's Memory Issue

Colwell's first contention is with the ALJ's finding that Colwell does not have a memory problem. *Id.* at 18. The ALJ concluded Colwell did not have a memory problem, but did have issues with his concentration and focus. AR 21. Colwell argues the ALJ "misread[] Colwell's testimony." Docket 12-1 at 18.

The court rejects Colwell's argument for two reasons. First, Colwell is asking the court to reweigh the evidence. Colwell points to three pieces of evidence in the record to demonstrate his memory problem: (1) Colwell answered "yeah" when the ALJ asked him, "You said you have some trouble with . . . your memory, is that right, or concentration?" (AR 50); (2) during his time at the furniture store he would forget to move a piece of furniture after being asked to move it (AR 42); and (3) during his time at the animal shelter, he would be asked to do something and forget about it (AR 58). Docket 12-1 at 18. But the court will not "reweigh the evidence regarding the ALJ's RFC assessment." *Quinn v. Berryhill*, No. 4:17-CV-04013-KES, 2018 WL 1401807, at *7 (D.S.D. Mar. 20, 2018). Second, Colwell does not point to any medical evidence that support's his memory issue, he only notes his and his mother's testimony. Docket 12-1 at 18. The RFC is a medical question, and Colwell's argument does not refute that "at least some" medical evidence supports the ALJ's RFC determination. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).

Overall, there is substantial evidence in the record that supports the ALJ's finding that Colwell does not have a memory problem. On July 8, 2013,

Rachel Wurth, a nurse practitioner observed, "He seems to be able to call from his memory, short term and long term." AR 497. During Colwell's intake at Plains Area Mental Health Center on August 21, 2013, his memory was noted as "unremarkable/intact." AR 613. On August 11, 2014, Dr. Romain's medical notes state Colwell's memory was intact. AR 862. In April of 2016, Jessica Shutt, a nurse practitioner, noted Colwell's memory was intact. AR 860. Also, Dr. Romain's and Shutt's medical notes contain no complaints from Colwell about memory issues. *See Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004) (holding a lack of complaints to a treating physician detracts from a claimant's allegations of a disabling impairment). During his testimony at the administrative hearing, Colwell stated, "I don't think it's memory loss; it's just . . . a lack of focus." AR 57. The court will not reverse the ALJ's decision based solely on Colwell's inconsistent testimony when there is substantial medical evidence on the record that Colwell does not have a memory problem.

### 2. Colwell's Daily Activities

Colwell alleges the ALJ erred in making several findings of facts about Colwell's daily activities. Docket 12-1 at 19. The ALJ found Colwell is a full-time student, taking four classes per semester that may be online or in-person courses. AR 21. The ALJ also found Colwell drives, goes shopping in stores, goes to the beach, and plays hockey on a weekly basis. AR 21, 24.

Colwell does not explain why or how the ALJ's findings were erroneous. Instead, Colwell provides additional background information about each activity in an attempt to have the court reweigh the evidence. Again, it is not

the court's job to "reweigh the evidence regarding the ALJ's RFC assessment." *Quinn*, 2018 WL 1401807, at *7.

All of the ALJ's factual findings are supported by substantial evidence in the record. First, there is evidence in the record that Colwell is a full-time college student. At the time of the administrative hearing, Colwell was a full-time college student at Daytona State College. AR 51, 265. Colwell's contention that the ALJ "completely leaves out . . . that Colwell's classes were largely taken at home via online course work" and that he needed help from his mother is false. Docket 12-1 at 19. The ALJ noted that Colwell takes online courses, though he also takes classes in person, and that Colwell testified he could not do his school work without the assistance of his mother and tutor. AR 21. Second, the ALJ's finding that Colwell can and does drive is supported by the record. Colwell provided testimony that he has a driver's license. AR 40. Colwell also testified that his weekly hockey games are the only thing he does on his own, so he likely drives himself to hockey practice and games. AR 56. Ms. Colwell testified that Colwell drives himself to about 20% of his appointments whenever she is traveling. AR 60. Additionally, the record contains evidence that Colwell does all of the daily activities noted by the ALJ: goes shopping for groceries (AR 56); goes to the beach (AR 56); and plays hockey once a week (AR 53, 54, 56). *See Baker v. Barnhart*, 457 F.3d 882, 893 (8th Cir. 2006) (holding there was substantial evidence to support the ALJ's finding that the claimant performed a significant number of daily living

activities and that he was capable of self-care because he drove, shopped, and ran errands).

### B. Weight Given to Treating Providers

A treating physician is a doctor with whom the patient "has, or has had, an ongoing relationship[.]". 20 C.F.R. § 404.1502 (2016); 20 C.F.R. § 416.902 (2015). A treating physician's opinion should generally be given controlling weight if the opinion is "well-supported by medically acceptable" diagnostic techniques and is consistent "with other substantial evidence in the record." *Wildman*, 596 F.3d at 964 (quoting *Brown,* 390 F.3d at 540). But a treating physician's opinion is not automatically controlling because the ALJ must evaluate the record as a whole. *Smith v. Colvin*, 756 F.3d 621, 627 (8th Cir. 2014); *Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir. 2007). The ALJ can discredit or disregard the treating physician's opinion when the "opinion conflicts with other substantial medical evidence contained within the record" or when the treating physician's opinion is inconsistent and undermines the opinion's credibility. *Wagner*, 499 F.3d at 849 (citations omitted). The ALJ "may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Id.* (quoting *Prosch v. Apfel*, 201 F.3d 101, 1014 (8th Cir. 2000)). Additionally, a treating physician's opinion that consists of "vague, conclusory statements" does not deserve greater weight than another physician's opinion. *Wildman*, 596 F.3d at 964 (quoting *Piepgras*, 76 F.3d at 236).

The ALJ resolves conflicts between the various opinions and evaluation from treating and examining physicians. *Wagner*, 499 F.3d at 848. In determining what weight to give any medical opinion, the ALJ should consider the following factors: (1) examining relationship, (2) treating relationship; (3) supportability of the opinion; (4) consistency; (5) specialization; and (6) "any factors [the applicant] or others bring[s] to [the ALJ's] attention." *Id.* (quoting 20 C.F.R. § 404.1527(d)). The ALJ must provide "good reasons" for the weight given to the treating physician's opinion. *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005) (citation omitted). "This requires the ALJ to explain in his written decision, with some specificity, why he has rejected the treating physician's opinion." *Walker v. Commissioner*, 911 F.3d 550, 553 (8th Cir. 2018) (citing *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000)).

Colwell argues the ALJ erred in evaluating evidence from Colwell's treating providers: Dr. Dean, Dr. Patra, and Dr. Thebaud. Docket 12-1 at 22. The ALJ used his factual findings to discredit Colwell's physicians' opinions. AR 24, 26. Colwell contends the ALJ's reliance on Colwell's daily activities does not warrant the ALJ's finding that these physicians were not credible. Docket 12-1 at 19-20.

### 1.    Dr. Dean and Dr. Patra's Opinions

The ALJ gave partial weight to Dr. Dean's opinion.[2] AR 24. Dr. Dean's opinion about Colwell's diagnoses and GAF Score – which indicate only

---

[2] Both the ALJ and Colwell state that it is Dr. Dean's opinion that Colwell is "incapable of caring for himself," but it is actually Dr. Patra's opinion, although

moderate signs and symptoms – received significant weight because it was consistent with the record as a whole, which showed Colwell's symptoms were well controlled when he was sober and compliant with treatment. *Id.* But Dr. Dean's opinion that Colwell is "incapable of caring for himself" (AR 501) was given little weight because it was inconsistent with Colwell's daily activities. AR 24. Colwell argues the ALJ erred in discounting evidence from Dr. Dean and should have given his opinion greater weight. Docket 12-1 at 22. He contends the ALJ improperly used Colwell's daily activities to discredit Dr. Dean's opinion. *Id.* at 19. The court disagrees with Colwell and finds the ALJ's weight given to Dr. Dean was justified.

Dr. Dean was Colwell's treating physician during his two inpatient visits at the Mercy Medical Center. AR 381-40, 500. Generally, his opinion should be given controlling weight, which the ALJ did in regard to Dr. Dean's diagnosis and GAF Score. AR 24; *see Julin v. Colvin*, 826 F.3d 1082, 1089 (8th Cir. 2016) (noting the ALJ did not reject the physician's opinion in its entirety because the ALJ gave substantial weight to the opinions that were not conclusory or based on the claimant's discredited subjective complaints). Here, the ALJ was justified in discrediting Dr. Dean's opinion about Colwell's ability to care for himself because Dr. Dean's opinion conflicted with other substantial evidence in the record. The court found there was substantial evidence in the record that Colwell was a full-time student, drove, went shopping, and played hockey.

Dr. Dean is the attending physician. Dr. Patra is the one dictating, drafting, and signing the mental health summary that contained the opinion. AR 501. The court will treat Dr. Patra's notes to be those of Dr. Dean.

The ALJ listed these facts as his specific reasons for giving little weight to Dr. Dean's opinion. Though a claimant's ability to perform some activities does not disprove a disability claim as a matter of law, the "inconsistencies between the subjective complaints of pain and daily living patterns may . . . diminish credibility." *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007) (internal quotations omitted). Thus, the evidence shows that Colwell has the ability to take care of himself, which is inconsistent with Dr. Dean's opinion. *See, e.g.*, *Ponder v. Colvin*, 770 F.3d 1190, 1195-96 (8th Cir. 2014) (holding the claimant's ability to perform light housework, wash dishes, handle money, leave her house, shop for groceries, watch TV, attend church, and visit family undermined her assertion of total disability). This inconsistency justifies the ALJ giving little weight to Dr. Dean's opinion that Colwell is "incapable of caring for himself."

### 2. Dr. Thebaud's Opinion

The ALJ gave "less than controlling weight" to Dr. Thebaud's opinion contained in his letter (AR 266). AR 26. The ALJ provided three reasons for discounting this opinion. *Id.* First, the ALJ noted that Colwell only saw Dr. Thebaud once. *Id.* The ALJ explained that the file contained no exam records conducted by Dr. Thebaud, instead, his nurse practitioner performed the medical check-ups with Colwell. *Id.* Second, the ALJ found the opinion was inconsistent with the medical evidence of the record, specifically in regards to the mental status exams that were normal and the GAF score of 60 by the

nurse practitioner. *Id.* Third, the ALJ found that the opinion was inconsistent with Colwell's daily activities. *Id.*

Here, Dr. Thebaud was Colwell's treating physician. Dr. Thebaud oversaw Colwell's prescription medication and Colwell went in monthly to Dr. Thebaud's office to have his medical evaluation with Dr. Thebaud's nurse practitioner, Jessica Shutt. AR 46-48. Generally, his opinion should be given controlling weight. AR 26. But the ALJ provided three specific reasons for discrediting Dr. Thebaud's opinion. *Id.* The court finds the reasoning was specific enough to satisfy *Walker*.

The court also finds that the reasons for discrediting Dr. Thebaud's opinion were sufficient. First, the ALJ noted that Colwell only met with Dr. Thebaud once. "[T]he results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision." *Cox v. Barnhart*, 345 F.3d 606, 610 (8th Cir. 2003); *see also Reinhardt*, 2017 WL 819479, at *14 (upholding the ALJ's determination to give little weight to a physician who only saw the claimant once prior to completing his opinion); *Casey*, 503 F.3d at 693 (finding the ALJ's decision to give less than controlling weight was justified by the sporadic nature of the treatment relationship and the physician's conclusory opinion). Though Colwell was a patient of Dr. Thebaud's office for two years prior to the administrative hearing, he only met with Dr. Thebaud once back in 2015 for an evaluation. AR 47-48. The single evaluation only lasted between 45 to 60 minutes. AR 57. Generally, Colwell met with Shutt monthly for short meetings ranging from five to ten minutes. AR 47,

57. Besides the March 2015 letter, there are no medical records or evidence that comes directly from Dr. Thebaud.

Second, the ALJ's finding that Dr. Thebaud's opinion was inconsistent with the medical evidence is supported by substantial evidence in the record. The ALJ noted specifically that the opinion was inconsistent with the mental status exams that were normal and the GAF score of 60 by the nurse practitioner. AR 26. The letter was dated March 26, 2015. AR 266. But in August of 2014, the note of Dr. Romain, another physician at Dr. Thebaud's office, stated she planned to continue Colwell on his current medication regimen as "he has done well on his present combination of psychotropic." AR 861-62. Additionally, she observed that Colwell had no auditory or visual hallucinations, no paranoid ideation, no mood swings or racing thoughts. AR 861. Dr. Romain noted that Colwell said his only problem was focusing. AR 862. Overall, Dr. Romain concluded that Colwell's mental status exam was normal. *Id.* Colwell's April 2016 medical check-up with Shutt had very similar notes. AR 860-61 (noting Colwell was in a good mood; no mood swings, depression, paranoia, or hallucinations; compliant with his medicine and no side effects). Here, there are significant inconsistencies between Dr. Thebaud's letter, Dr. Romain's 2014 medical notes, and Shutt's 2016 medical notes. *See Bradley v. Astrue*, 528 F.3d 1113, 1115-16 (8th Cir. 2008) (holding the ALJ did not err in discounting two physician's opinions because they were inconsistent with the medical evidence in the record and inconsistent with their own examinations). Thus, the ALJ was justified in giving less than controlling

weight to Dr. Thebaud's letter. Also, the ALJ did not completely disregard Dr. Thebaud's letter because the ALJ noted these limitations in his final RFC. *See* AR 20.

Third, the ALJ discounted Dr. Thebaud's opinion because it was inconsistent with Colwell's daily activities. The same reasoning from this court's analysis of Dr. Dean's opinion applies here. Colwell's ability to be a full-time student, drive, shop, go to the beach, and play hockey do not align with Dr. Thebaud's opinion that Colwell has marked restrictions in daily living, social functioning, and concentration. For example, Colwell's ability to drive negates Dr. Thebaud's assertions that Colwell is unable to concentrate. *See Reece v. Colvin*, 834 F.3d 904, 910 (8th Cir. 2016) (upholding the ALJ's observation that "driving a car requires concentration and mental skill . . . ."). Thus, the court finds that the ALJ did not err in discounting Dr. Thebaud's testimony.

As previously discussed, the ALJ was also justified in discounting Dr. Thebaud's opinion because it was conclusory. *See also Wildman*, 596 F.3d at 964 (affirming the ALJ's decision to give little weight to the claimant's physician when the physician concluded the claimant could only work, sit, and stand one hour per day because the opinion was conclusory).

### C.    Weight Given to Lay Witnesses

The ALJ considered several pieces of evidence from various lay witnesses including his mother, Pam Colwell, his grandmother, Betty Garwood, his previous criminal defense attorney, Patrick Tott, and his previous supervisor at

the animal shelter, Judy Sarullo. AR 27-28. Colwell argues the ALJ failed to give appropriate weight to several lay people's testimony about the effects of Colwell's disability. Docket 12-1 at 24. Colwell contends the ALJ was required to "consider the subjective evidence of disability as testified to by the claimant and corroborated by other observers, including family members." *Id.*

The ALJ is in a better position to evaluate credibility of witnesses. *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). If the ALJ explicitly states good reasons for discrediting the witness and it is adequately supported by substantial evidence, the court will defer to the ALJ's credibility determination. *Id.*; s*ee also Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).

### 1. Pam Colwell's Opinion

The ALJ considered a letter drafted March 23, 2015, by Pam Colwell. AR 27; AR 264-65. Ms. Colwell's letter stated Colwell required assistance for routine management of life skills like waking up, his schedule, medication, and eating. AR 264. She explained that though Colwell had started taking classes again he still struggled to manage his assignments and schedule. AR 265. She wrote that even when Colwell was stable on his medication, he still experienced bouts of energy drains that lasted for days. *Id.* The ALJ gave little weight to this letter. AR 28.

The court finds the ALJ's credibility determination of Ms. Colwell's opinion is justified. The ALJ explicitly listed his reasoning for giving little weight to this opinion. First, the ALJ stated the reported "energy drains" were

not reported to any of Colwell's mental health providers. AR 27. Second, the symptoms and signs Ms. Colwell wrote about were inconsistent with Colwell's ability to attend school full time, drive a car without supervision, play hockey, and shop. *Id.* Third, the ALJ noted that the symptoms and signs were also inconsistent with recent treatment records that showed Colwell's mental status exams were mostly normal and his symptoms were well controlled. AR 27-28.

The ALJ's three reasonings are supported by substantial evidence in the record. As noted by the ALJ, there is no medical evidence that Colwell suffered from energy drains. "A lack of complaints to a treating physician detracts from a claimant's allegations of a disabling impairment." *Reece*, 834 F.3d at 909 (citing *Fredrickson*, 359 F.3d at 976). Six months before Ms. Colwell's letter, Colwell met with Dr. Romain. AR 861. Dr. Romain's notes stated Colwell had no mood swings, was sleeping well, and only had problems with focusing. AR 861. The only evidence that pertains to these energy drains is Colwell and his mother's testimony. AR 55, 265. Because Ms. Colwell's statement about the energy drains is not supported by any medical evidence, the ALJ was justified in discrediting this opinion.

Next, the court has previously upheld the ALJ's factual findings pertaining to Colwell's daily activities. "Evidence of daily activities that are inconsistent with allegations . . . may be considered in judging the credibility of such complaints." *Reece*, 834 F.3d at 909 (citing *Dunahoo v. Apfel*, 241 F.3d 1033, 1038-39 (8th Cir. 2001)). Ms. Colwell attempts to state Colwell requires assistance in waking up, eating, scheduling, etc. But Colwell is able to go

shopping, attend his weekly hockey practices completely on his own, attend college classes in person and online, complete his homework, watch TV, make food, go to the beach with his brother, help around the house, and do laundry. AR 51-59. Colwell's activities are inconsistent with someone who cannot function in his daily life like his mother claims. Therefore, the ALJ properly used his earlier factual findings to discredit Ms. Colwell's opinion. *See McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (upholding the ALJ's discounting of the claimant's subjective complaints when his daily activities were inconsistent); *Lorenzen v. Chater,* 71 F.3d 316, 319 (8th Cir. 1995) (noting an arguable deficiency in the ALJ's opinion does not require the reviewing court to set aside an administrative finding when the witness's testimony is discredited by the same evidence that proves the claimant's claims not credible).

Finally, Ms. Colwell's statements are inconsistent with substantial evidence in the record. There is substantial medical evidence that supports Colwell's symptoms are well controlled when he is compliant with treatment. *See* AR 860-62 (Shutt and Dr. Romain's medical notes document normal mental status exams); AR 500 (Dr. Dean's GAF score of 55 and Colwell's improvement in mood); AR 788 (Okine's observation Colwell is doing well and does not endorse psychotic symptoms); AR 615 (Jan Smith, M.S. intake clerk at Plains Area Mental Health Center notes Colwell no longer hears voice since taking medication and medication is working well). Thus, this court finds the ALJ gave appropriate weight to Ms. Colwell's opinion.

## 2. Sarullo and Garwood's Opinions

The ALJ considered a letter from Judy Sarullo, the supervisor at the animal shelter, dated February 12, 2015. AR 261. Sarullo wrote "Alec had a challenge staying focused and finishing task due to his illness and became a liability to the staff and animals." *Id.* The ALJ gave partial weight to her opinion. AR 28. Additionally, the ALJ considered a letter from Colwell's grandmother, Betty Garwood, dated April 23, 2015. AR 267. Garwood wrote about Colwell's challenges when he worked on their family farm. *Id.* She wrote he had considerable help from his family, needed remainders, could not tolerate working long days, and was often exhausted. *Id.* The ALJ gave partial weight to her opinion. AR 28.

Colwell argues the ALJ failed to give appropriate weight to these lay opinions and did not provide "any real explanation as to why he did not give them more weight." Docket 12-1 at 24. Colwell's argument is without merit because the ALJ provided an explanation. For both opinions, the ALJ explicitly stated that he gave partial weight because they "had several opportunities to observe [Colwell]" when he volunteered at Sarullo's shelter and worked at his grandmother's farm. AR 28. These explanations are sufficient. Additionally, the ALJ gave the opinions partial weight; he did not attack their credibility or discount their opinions. The court finds the ALJ was justified in giving Sarullo and Garwood's opinions partial weight.

### 3. More Restricted RFC

Colwell argues the ALJ should have issued a more restricted RFC that included: (1) his marked restrictions in concentration, persistence, and pace; (2) restrictions on memory; (3) the need for two or more unscheduled breaks; and (4) missing two or more days per month of work. Docket 12-1 at 17. Colwell urges this court to blanketly adopt Dr. Thebaud's opinion contained in his letter (AR 266). As held above, the ALJ was justified in giving less than controlling weight to Dr. Thebaud's letter.

Colwell states the ALJ should have noted more marked restrictions on concentration, persistence, and pace. Docket 12-1 at 17. The ALJ did take into consideration Colwell's challenges with focusing and concentration. The ALJ's RFC contains non-exertional limitations. AR 20. The ALJ determined Colwell could do simple, routine, repetitive tasks in a low stress, stable involving few changes in the routine work setting. *Id.* Additionally, the ALJ limited Colwell's decision making to simple work-related ones. *Id.* Most importantly, the ALJ determined Colwell could maintain concentration, persistence, and pace in two-hour segments. *Id.* There is no medical evidence in the record, other than the discredited opinion of Dr. Thebaud, that states Colwell's concentration cannot last up to two hours.

Additionally, the ALJ properly used Colwell's status as a full-time college student to determine Colwell's concentration limitation. *See Colemer v. Colvin*, No. 14-CV-4936 (HB), 2016 WL 8198307, at *9 (D. Minn. Mar. 7, 2016) (upholding ALJ's RFC determination and noting the ALJ was cognizant of the

claimant's accommodated education when determining the RFC as the RFC limited the claimant to performing simple, routine, and repetitive tasks and sustaining concentration, persistence, and pace for two-hour segments). Here, the ALJ took into consideration Colwell's academic accommodations like the use of a tutor for his online courses and his mother's help in scheduling and task-management. AR 19. But he also countered those accommodations with Colwell's continued success and ability to perform adequately at the collegiate level. Like the claimant in *Colemer*, Colwell has earned A's and B's, and he has failed some classes. AR 56; *see Colemer*, 2016 WL 8198307, at *9. As the ALJ properly did in *Colemer*, the ALJ here considered Colwell's increase in school performance to demonstrate his finding that Colwell's mental impairments improved over time. *Id.* Also, when Colwell takes his college courses in person, he maintains concentration for the 1 hour and 40-minute class period. AR 52.

Second, Colwell states the ALJ should have noted more restrictions on memory. Docket 12-1 at 17, 18. The court previously ruled that the ALJ's finding that Colwell had no memory problem was supported by substantial evidence. The ALJ did not need to note more restrictions on memory when Colwell has no problem with memory. *See Wildman*, 596 F.3d 959 at 964 (finding the claimant's argument that the ALJ should have included pace and attendance limitations in his RFC was unfounded because the ALJ's RFC determination was influenced by his finding that the claimant's allegations were not credible).

Lastly, Colwell argues the ALJ should have noted that Colwell needs two or more unscheduled breaks, as well as missing two or more days per month of work. Docket 12-1 at 17. As stated above, the ALJ gave little weight to Dr. Thebaud's opinion in the letter that contained the opinion Colwell needed more breaks and would miss work. AR 26, 266. Dr. Thebaud's opinion is not supported by any medical evidence in the record. Dr. Thebaud and his physician-extending staff never mention in their appointment notes that Colwell would require these limitations if he worked. *See, e.g.*, *Reed*, 399 F.3d at 921 (discussing the Eighth Circuit's precedent in upholding "an ALJ's decision to discount a treating physician's MSS where the limitations listed on the form 'stand alone,' and were 'never mentioned in [the physician's] numerous records or treatment' nor supported by 'any objective testing or reasoning.' "); *Hacker v. Barnhart,* 459 F.3d 934, 938 (8th Cir. 2006) (upholding the ALJ's decision to disregard the treating physician's RFC determination because there was substantial evidence in the record that discredit the treating physician's opinion). Thus, the ALJ did not need to include these limitations in his RFC determination.

Besides Dr. Thebaud's letter, Colwell provides the court with no basis to reverse the ALJ's RFC determination. The ALJ took into consideration all of the limitations contained within the medical and lay opinions. This case presents an instance where substantial evidence in the record as a whole supports the conclusion that Colwell has a mental RFC that allows him to do unskilled work with some non-exertional limitations. In such a situation, this court is to affirm

the ALJ. *See Reinhardt*, 2017 WL 819479, at \*14 (citing *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014)).

## IV.    Substantial Evidence Supports the ALJ's Decision

Colwell argues that the record as a whole does not support the ALJ's finding that Colwell is not disabled. Docket 12-1 at 21. Colwell points to several pieces of evidence in the record that he believes warrants a reversal. The court will not reweigh the evidence. Based on this court's previous findings in this case, the court rejects Colwell's argument and finds that substantial evidence on the record as a whole supports the ALJ's decision.

First, Colwell argues his "significant periods of inpatient treatment and group home living" indicate he was incapable of taking care of himself. Docket 12-1 at 21. The ALJ took into consideration Colwell's various inpatient stays in determining Colwell's RFC. AR 22, 23, 24, 25. Colwell's inability to care for himself is not the sole basis of Colwell's time in inpatient facilities. Conversely, medical evidence shows Colwell's drug abuse was one of the main reasons for his inpatient stays. Dr. Dean stated the importance of sending Colwell to the Pride Group facility was to restrict Colwell's access to recreational drugs. AR 332. Dr. Dean opined, "[O]ne of the reasons why I do not believe that this gentleman can go out and live independently and do well, is because I do not believe that he actually has the insight to stay free of drugs . . . ." *Id*. Additionally, the ALJ countered Colwell's assertion that he is incapable of taking care of himself by his daily activities as discussed above.

Second, Colwell argues the ALJ overstated Colwell's drug use to downplay the evidence of Colwell's inpatient treatments. Docket 12-1 at 21. But Colwell has not provided the court any place in the ALJ's opinion that this occurred. The ALJ does note that Colwell's symptoms were significant when he was abusing marijuana and cough syrup. AR 23, 24. Colwell argues his drug use did not have any impact on the treating medical provider who concluded he was incapable of taking care of himself. Docket 12-1 at 21. But in reviewing that opinion, the court finds Dr. Dean's opinion is tied directly to Colwell's drug use. In the same report as that statement, Dr. Dean diagnoses Colwell with "comorbid polysubstance dependence." AR 500. Also, in Dr. Patra and Dr. Dean's medical notes, there are numerous instances where they discuss Colwell's drug abuse. *See* AR 304 (noting Colwell's chance of living independently depends on how he handles his recreational drug problem); AR 317 (noting Colwell started to get paranoid after abusing Triple-C, an over the counter pill); AR 322 (stating Colwell's prognosis is extremely guarded because he has a long-standing history of recreational drug abuse); AR 332 (stating the reason Colwell cannot live independently is because he does not have the insight to stay drug free). Colwell's own testimony demonstrates his mental health issues mainly occurred when he was on drugs. AR 50. He stated he experienced hallucinations and delusions when on drugs, but did not experience them when he was sober. *Id.*

Additionally, Colwell states the ALJ's overuse of Colwell's drug problem is evident by the fact that Colwell still had significant mental health issue during

his two years of sobriety. Docket 12-1 at 21. This allegation is unsupported. Colwell's sobriety started after October of 2013 as Colwell tested positive for THC in September of 2013. AR 654, 655. Dr. Romain's medical notes from August of 2014 contain no mental health issues as Colwell's mental status exam was normal, he was not experiencing any psychotic behavior, and had no side effects from his prescribed medication. AR 861-62; *see also* AR 860-61 (medical notes discussing Colwell's stable moods).

Lastly, Colwell argues the ALJ incorrectly evaluated the significance of Colwell's bipolar disorder and the ameliorating effects of his prescription medication. Docket 12-1 at 22. Colwell cannot point to any medical evidence that relates to the severity of his bipolar disorder or to its effects. In reviewing the medical evidence, medical notes from his treating physician state he had no side effects from his medication and was in good moods at every appointment. AR 860-62. Furthermore, the ALJ discussed Colwell's bipolar diagnosis throughout his opinion. AR 18, 24, 25, 26.

The Court finds there is substantial evidence in the record that supports the ALJ's decision to deny disability. The ALJ's finding that Colwell can care for himself was supported by his daily activities. The ALJ properly considered and balanced Colwell's drug abuse and his inpatient treatments. Finally, the ALJ correctly evaluated Colwell's bipolar disorder in his decision.

## V. Evidence to the Appeal's Council

Colwell argues the Appeals Council failed to properly consider the evidence from Bryce Laraway. Docket 12-1 at 25. Bryce Laraway is Colwell's

treating counselor. *Id.*; AR 47, 57. Laraway's letter, dated May 30, 2016, discusses Colwell's and his counseling relationship, lists the symptoms of schizoaffective disorder, and opines Colwell is unemployed due to his mental health issues. Docket 12-1 at 28-29. Laraway drafted his letter before the administrative hearing but did not send it until after the hearing and the issuance of the ALJ opinion. The Appeals Council did not consider the letter as evidence when it denied review of Colwell's appeal. AR 2.

"When the Appeals Council considers the new evidence but declines to grant review, the district court does not evaluate the Appeals Council's decision not to review." *Darnell v. Berryhill*, 5:17-CV-05002-VLD, 2018 WL 1306281, at *31 (D.S.D. Mar. 13, 2018) (citing *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994)). Instead, the ALJ's decision becomes the final decision of the Commissioner. *Mackey v. Shalala*, 47 F.3d 951, 953 (8th Cir. 1995). And the reviewing court must determine whether the record as a whole, including the new evidence, supports the ALJ's decision. *Cunningham*, 222 F.3d at 500. "To an extent, this requires the court to speculate as to 'how the administrative law judge would have weighed the newly submitted reports if they had been available in the original hearing.' " *Darnell*, 2018 WL 1306281, at *31 (quoting *Riley*, 18 F.3d at 622)).

Colwell asserts Laraway's opinion "undercuts" the ALJ's decision. Docket 12-1 at 26. The court disagrees. First, Laraway's opinion does not constitute substantial evidence upon which to base Colwell's RFC determination. Here, Bryce Laraway, a licensed marriage and family therapist, would be considered

an "other source." *Seay v. Berryhill*, No. 5:16-CV-05096-VLD, 2018 WL 1513683, at *38 (D.S.D. Mar. 27, 2018) (citing *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007)). Other sources' opinions can be used to determine the severity of Colwell's impairment and how such impairment affected his ability to work. *Id.* "[O]rdinarily, the opinion of a non-treating, non-examining physician does not constitute substantial evidence upon which to base a claimant's residual functional capacity finding." *Id.* at *42 (citations omitted). Thus, Laraway's opinion would not constitute substantial evidence to reverse the ALJ's finding.

Second, the ALJ could have properly discredited Laraway's opinion for two reasons. First, the ALJ could have discredit Laraway's conclusion because "opinions on a patient's employment capability, *e.g.*, [the claimant] was 'incapable of gainful employment,' are often not entitled to significant weight." *Bradley*, 528 F.3d at 1116 (citing *Flynn v. Chater,* 107 F.3d 617, 622 (8th Cir. 1997)). Here, Laraway stated, "At this time Alec Colwell is in an unemployable situation . . . ." Docket 12-1 at 29. Thus, Laraway's opinion on Colwell's general employability is not entitled to significant weight. Second, Laraway's opinions are inconsistent with substantial evidence on the record. Laraway's letter alleges Colwell currently suffers from various symptoms; but Dr. Romain and Dr. Thebaud's medical notes state Colwell had no mood swings, no hallucinations, good sleep pattern, good mood. AR 860-862.

Likely, Laraway's opinion would not be given significant weight because he is only an "other" medical source, the opinion talks about Colwell's general

employability, and the opinion is inconsistent with substantial evidence in the record. Therefore, substantial evidence in the record as whole, including Laraway's letter, supports the ALJ's finding to deny disability.

## CONCLUSION AND ORDER

The court finds that the ALJ's finding was supported by substantial evidence in the record as a whole. Additionally, the court finds the Appeals Council's failure to consider the new evidence does not warrant reversal of the ALJ's decision. Thus,

IT IS ORDERED that the decision of the Commissioner AFFIRMED.

DATED January 17, 2019.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE